An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-257

Filed 1 October 2025

Mecklenburg County, No. 18CVS010730-590

RICHARD TOPPING, Plaintiff,

v.

KURT MEYERS AND MCGUIREWOODS, LLP, Defendant.

Appeal by defendants from order entered 26 September 2024 by Judge Richard L. Doughton in Mecklenburg County Superior Court. Heard in the Court of Appeals 10 September 2025.

*Pfeiffer Rudolf, by David S. Rudolf, Joseph P. Lattimore, and Sonya Pfeiffer, for plaintiff-appellee.*

*Mullins Duncan Harrell & Russell PLLC, by Allison O. Mullins and Alan W. Duncan, and Hillary M. Kies, for defendant-appellants.*

TYSON, Judge.

Kurt Meyers and McGuireWoods, LLP ("Defendants") appeal from an interlocutory order entered 26 September 2024 denying their motion for summary judgment. We dismiss Defendants' interlocutory appeal and remand.

## I. Background

The factual background was previously summarized in this Court's prior opinion in *Topping v. Meyers*, 270 N.C. App. 613, 842 S.E.2d 95 (2020) ("*Topping I*"):

> Defendants' client, Cardinal Innovations Healthcare Solutions ("Cardinal") is a Local Management Entity/Managed Care Organization under the Mental Health, Developmental Disabilities, and Substance Abuse Act of 1985. N.C. Gen. Stat. § 122C-1 (2019). Cardinal is an "area authority," which is "a local political subdivision of the State." N.C. Gen. Stat. §§ 122C-3(1), 122C-116(a) (2019).
>
> Plaintiff became the Chief Executive Officer ("CEO") of Cardinal 1 July 2015. Following receipt and review of a North Carolina State Auditor's performance audit in May 2017, the Secretary of the North Carolina Department of Health and Human Services ("DHHS") initiated an investigation into Cardinal's activities.
>
> The subsequent investigatory report "sharply criticized" the severance provisions of Plaintiff's employment contract and several other Cardinal executives, and also Plaintiff's compensation and potential bonus opportunities under his contract. Plaintiff and three other executives resigned from Cardinal in November 2017, after the audit and DHHS report. Plaintiff was paid two years' severance, allegedly worth $1.7 million. DHHS officials took over Cardinal's operations and fired its board members. The new board ("the Board") hired Defendants in January 2018 to conduct an independent internal investigation of Plaintiff's conduct relating to the drafting and approval of the severance agreements, and the November 2017 severance payments made to himself and three other former Cardinal executives, who had also resigned.
>
> Defendant Meyers presented the findings of the investigation to the Board on 23 March 2018. The Board voted to file a lawsuit against Plaintiff, seeking the return of the November 2017 two year's severance payment based upon his alleged misconduct. The Board also authorized a

> press conference to be held after filing the suit, wherein Defendant Meyers would present the findings and allegations in the complaint to the media.
>
> Cardinal filed suit against Plaintiff at 9:00 a.m. on 26 March 2018. A press conference began at 10:30 a.m., during which Defendant Meyers gave his presentation to the assembled representatives of the media.
>
> Plaintiff filed suit against Defendants on 30 May 2018, alleging libel *per se*, slander *per se*, negligent infliction of emotional distress, negligence, and punitive damages.
>
> The trial court struck four paragraphs of Plaintiff's complaint for impermissible reliance upon the North Carolina Rules of Professional Conduct to allege a legal duty and standard of care for the negligence claims. The trial court otherwise denied Defendants' motion. Defendants timely filed notice of appeal.

*Id.* at 614-15, 842 S.E.2d at 98.

This Court unanimously dismissed Defendants' appeal as interlocutory and remanded to the trial court on 17 March 2020. *Id.* at 614, 842 S.E.2d at 98. Defendants' subsequent petition for discretionary review to our Supreme Court was denied by order. *See Topping v. Meyers*, 376 N.C. 897, 854 S.E.2d 800 (2021). After remand, the parties entered into discovery.

Following the Supreme Court of North Carolina's opinion in *Bouvier v. Porter*, 386 N.C. 1, 900 S.E.2d 838 (2024), Defendants filed an early motion seeking summary judgment based upon absolute privilege and public official immunity defenses on 12 July 2024. On 26 September 2024, the trial court denied Defendants' summary judgment motion, which Defendants appealed on 9 October 2024.

This Court entered an order staying further discovery on 12 December 2024. This Court also issued a writ of *supersedeas* on 23 January 2025 staying: "Further proceedings in the case, including discovery" "pending resolution of [the] appeal or until further order of this Court."

## II.    Jurisdiction

Our Supreme Court has held:

> Ordinarily, an appeal from an interlocutory order will be dismissed as fragmentary and premature unless the order affects some substantial right and will work injury to appellant if not corrected before appeal from final judgment. ... Essentially a two-part test has developed[:] the right itself must be substantial and the deprivation of that substantial right must potentially work injury to plaintiff if not corrected before appeal from final judgment.

*Goldston v. American Motors Corp.*, 326 N.C. 723, 726, 392 S.E.2d 735, 736 (1990) (citations and internal quotation marks omitted).

On a purported appeal from an interlocutory order, "the appellant has the burden of showing this Court that the order deprives the appellant of a substantial right which would be jeopardized absent a review prior to a final determination on the merits." *Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 380, 444 S.E.2d 252, 254 (1994) (citations omitted).

Defendants assert the trial court's order deprived them of substantial rights and is immediately appealable because the trial court failed to dismiss Plaintiff's claims for absolute privilege and derivative public official immunity. *see, e.g.*, *Summey v. Barker*, 142 N.C. App. 688, 689, 544 S.E.2d 262, 264 (2001) (citations

omitted) (holding public official immunity affects a substantial right and is immediately appealable).

This Court has explained:

> The justification for [allowing interlocutory appeals] stems from the nature of the immunity defense. A valid claim of immunity is more than a defense in a lawsuit; it is in essence immunity from suit. Were the case to be erroneously permitted to proceed to trial, immunity would be effectively lost.

*Slade v. Vernon*, 110 N.C. App. 422, 425, 429 S.E.2d 744, 746 (1993) (citations omitted).

If an absolute immunity bar to suit extends and applies to Defendants' actions, the trial court's failure to grant Defendants' motion for summary judgment deprives Defendants of immunity from suit. *Topping I*, 270 N.C. App. at 617, 842 S.E.2d at 99 ("If applicable, this denial of immunity from suit, as asserted in Defendants' motion, is a substantial right for Defendants, which would be lost, absent interlocutory review.").

Defendants argue they are entitled to immunity from suit based on two forms of immunity: (1) absolute immunity, and (2) "derivative" public official immunity. Defendants put forth the identical arguments as were asserted in their previous interlocutory appeal in *Topping I*. *See Topping I*, 270 N.C. App. at 623-27, 842 S.E.2d at 102-05.

Defendants previously asserted what this Court described as "legislative immunity' based upon their statements purportedly being part of a quasi-judicial

proceeding, *Id.* at 626, 842 S.E.2d at 104-05, and they now label the basis of their second immunity argument as "derivative" public official immunity. In *Topping I*, this Court specifically addressed whether Defendants were entitled to immunity for their statements because the press conference was held at the direction of Cardinal, the very same argument they assert today. *Topping I*, 270 N.C. App. at 625-27, 842 S.E.2d at 104-05 ("Defendants liken their press conference to the letter sent in *Angel*, because it was held at the direction of Cardinal, a local political subdivision."); ("As an outside investigator that provided a report to the Board and followed the Board's direction to make the report public, McGuireWoods should not be 'left holding the bag' by being subjected to a defamation lawsuit.").

Despite Defendants' attempts to re-label their argument, its substance is the same. Under the law of the case doctrine:

> when an appellate court passes on a question and remands the cause for further proceedings, the questions there settled become the law of the case, both in subsequent proceedings in the trial court and on subsequent appeal, provided the same facts and the same questions which were determined in the previous appeal are involved in the second appeal.

*Hayes v. City of Wilmington*, 243 N.C. 525, 536, 91 S.E.2d 673, 681-82 (1956).

"[T]he 'law of the case' doctrine prevents parties from relitigating issues that have already been resolved." *Royster v. McNamara*, 218 N.C. App. 520, 530, 723 S.E.2d 122, 129 (2012) (citation omitted). This doctrine "is basically a rule of procedure rather than of substantive law, and must be applied to the needs of justice

with a flexible, discriminating exercise of judicial power." *Hayes*, 243 N.C. at 537, 91 S.E.2d at 682.

Defendants argue the "law of the case" doctrine does not apply to this appeal because the questions of law and facts are different, based on the procedural postures of the two interlocutory appeals. While Defendants correctly note "a motion for summary judgment and a motion to dismiss pursuant to Rule 12(b)(6) do not present the same legal question," *Adkins v. Stanly Cty. Bd. of Educ.*, 203 N.C. App. 642, 647, 692 S.E.2d 470, 473 (2010), the question this Court previously decided on interlocutory appeal and again at issue again now is a jurisdictional one, *Topping I*, 270 N.C. App. at 628, 842 S.E.2d at 106 (dismissing Defendants' appeal as interlocutory because Defendants' statements were not made in due course of a judicial proceeding and do not fall within the immunity afforded to public officials, and thus do not affect a substantial right).

## A. Absolute Immunity

The justification for an absolute privilege is rooted in public policy "grounded upon the proper and efficient administration of justice. Participants in the judicial process must be able to testify or otherwise take part without being hampered by fear of defamation suits." *Id.* at 624, 842 S.E.2d at 103 (quoting *Jones v. Coward*, 193 N.C. App. 231, 234, 666 S.E.2d 877, 879 (2008)). Defendants assert application of the absolute privilege in this case would fulfill its public policy purpose, but they fail to point to any meaningful developments in the statutes or caselaw to support their

position since *Topping I* was decided.

Defendants rely on the Supreme Court of North Carolina's decision in *Bouvier,* and argue it expands the protection of absolute privilege to require broader application and is the controlling case, rather than *Topping I*.

In *Bouvier*, the Court held "the absolute privilege must apply broadly to *anyone* involved in any aspect" of an *election protest* because "[the public interest] is especially strong when the quasi-judicial proceeding implicates accuracy in elections." *Bouvier*, 386 N.C. at 13, 900 S.E.2d at 849 (citation omitted).

The issues in this case do not involve an election protest. While *Bouvier* discusses a broader application of absolute privilege beyond the context of election protests, those applications involve privilege for individuals making advisory statements, in private, during the consideration of prospective litigation. *Id.* at 13-14, 900 S.E.2d at 849.

Alternatively, as this Court concluded in *Topping I*: "[o]ur immunity from suit precedents appropriately protect communications made between parties, their counsel, or the court itself, from the fear of defamation suits. A press conference to the media is not communication between the parties, their counsel, nor with or concerning the court." *Topping I*, 270 N.C. App. at 624, 842 S.E.2d at 103. Neither the facts or law in *Bouvier* nor the contexts *Bouvier* analogizes involved public statements made during a press conference.

The Supreme Court in *Bouvier* reiterated what this Court held in *Topping I*,

"the [absolute privilege's] protection from liability to suit attaches by reason of the setting in which the defamatory statement is spoken or published. *The privilege belongs to the occasion.* It does not follow the speaker or publisher into other surroundings and circumstances." *Bouvier*, 386 N.C. at 11, 900 S.E.2d at 847 (citation omitted)(emphasis supplied); *see Topping I*, 270 N.C. App. at 620, 842 S.E.2d at 101. Despite Defendants' arguments to the contrary, *Bouvier* does not explicitly nor implicitly overrule this Court's prior holding in *Topping I*.

Although discovery has occurred since Defendants' prior interlocutory appeal and this appeal is from denial of Defendants' motion for summary judgment, the facts remain substantially the same as were present in *Topping I*.

In *Topping I*, this Court held:

> Defendants fail to show they possess "a substantial right which would be jeopardized absent a review prior to a final determination on the merits." *Jeffreys*, 115 N.C. App. at 380, 444 S.E.2d at 254. Although the trial court's distinction between litigation and investigatory counsel is unpersuasive and without basis, the trial court did not err in declining to extend absolute immunity from suit to Defendants in this case.
> Defendants' statements made at the out-of-court press conference during pending litigation are too far afield to be considered "made in due course of a judicial proceeding." *Burton*, 85 N.C. App. at 705, 355 S.E.2d at 802. Defendants' statements made at the out-of-court press conference following their investigation into Plaintiff's conduct on behalf of Cardinal do not fall within the immunity afforded to lesser legislative bodies. *See Boston*, 73 N.C. App. at 461, 326 S.E.2d at 106. Defendants' appeal as to their assertion of absolute privilege is dismissed as interlocutory.

*Topping I*, 270 N.C. App. 627-28, 842 S.E.2d at 105-06.

The "same facts and the same questions which were determined in the previous

appeal are involved in [this] appeal," *Hayes*, 243 N.C. at 536, 91 S.E.2d at 681-82 Since this Court decided the same jurisdictional question in *Topping I* asserted again in this appeal, "that decision becomes the law of the case and governs other panels which may thereafter consider the case." *N.C.N.B. v. Virginia Carolina Builders*, 307 N.C. 563, 567, 299 S.E.2d 629, 631 (1983). The holding in *Topping I* is the "law of the case" and requires dismissal again of Defendants' interlocutory appeal. *Id.*

**B. Purported Petition for Writ of *Certiorari* and Motion to Dismiss Appeal**

Defendant's brief asserts a purported petition for writ of *certiorari*. Plaintiff has filed a motion to dismiss Defendants' interlocutory appeal. In the exercise of our discretion, we deny Defendant's purported petition for writ of *certiorari* asserted in its brief, and we allow Plaintiff's motion to dismiss Defendants' interlocutory appeal.

### III. Conclusion

The Supreme Court's decision in *Bouvier* does not overrule this Court's prior decision and holding in *Topping I*. The "law of the case" doctrine binds this Court to its prior decision in *Topping*. *Id.* In the exercise of our discretion, we deny Defendant's purported petition for writ of *certiorari* and allow Plaintiff's motion to dismiss this appeal.

Defendant's interlocutory appeal is dismissed, and this cause is remanded for further proceedings. We express no opinion on the validity, if any, of Plaintiff's claims nor of Defendant's defenses thereto. *It is so ordered.*

DISMISSED.

Judges GORE and MURRY concur.

Report per Rule 30(e)